# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| AMY M. | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CAUSE NO.: 3:19-CV-143-JVB |
| | ) |
| ANDREW SAUL, Commissioner of the | ) |
| Social Security Administration, | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Amy M. seeks judicial review of the Social Security Commissioner's decision denying her claims for disability insurance benefits and supplemental security income and asks the Court to either award benefits or remand the case for further administrative proceedings. For the reasons below, the Court reverses the decision of the Commissioner of Social Security and remands this matter for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income on August 28, 2015, alleging that she became disabled on May 5, 1990. After a video hearing on August 17, 2017, and Administrative Law Judge (ALJ) issued a decision denying Plaintiff's claims and making the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in sustained substantial gainful activity since her alleged onset date.

3. The claimant has the following severe impairments: borderline intellectual functioning and a mild neurocognitive disorder due to traumatic brain injury.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. . . . [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember and carry out simple instructions and tasks; she can make judgments on simple work-related decisions; she can respond appropriately to coworkers, supervisors, and the general public; she can respond appropriately to usual work situations, and she can deal with routine changes in a routine work setting.

6. The claimant is capable of performing her past relevant work as a Fast Food Worker DOT# 311.472-101, SVP 2, light per the DOT and medium as performed. This work does not require the performance of work, related activities precluded by the claimant's residual functional capacity.

   In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform.

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 5, 1990, through the date of this decision.

(AR 23-33). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review.

## STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## DISABILITY STANDARD

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) Whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether [she] can perform [her] past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## ANALYSIS

Plaintiff argues that the ALJ erred by not incorporating all of Plaintiff's limitations in her residual functional capacity (RFC), by overemphasizing Plaintiff's daily activities, by not supporting her step 4 decision, and by not having a proper foundation for her step five finding.

### A. Steps Four and Five

The ALJ, in a bold finding early in her opinion, found that Plaintiff had not engaged in "sustained substantial gainful activity since her alleged onset date." (AR 23). The ALJ noted two paragraphs later that there was a "possible exception" of substantial gainful activity in 2001. However, the ALJ continued her analysis past step 1, thus implying that the ALJ found that Plaintiff had not engaged in substantial gainful activity. Later in the decision, the ALJ specifically stated that Plaintiff "did not work at substantial gainful activity levels" at McDonald's, which was her employer for 17 years, including 2001. (AR 31).

However, the finding of Plaintiff's ability to perform her past relevant work is based on this work at McDonald's. Past relevant work must be performed at substantial gainful activity levels. *Lauer v. Bowen*, 818 F.2d 636, 639 (7th Cir. 1987); *Novak v. Barnhart*, 180 F. Supp. 2d 990, 1001 (E.D. Wis, 2001). The ALJ's step 4 finding is inconsistent with her prior statements that the work at McDonald's was not substantial gainful activity. The step four finding, therefore, is

3

insufficient to support the ALJ's ultimate decision on disability. Accordingly, the Court must look at the ALJ's step five alternative findings.

Plaintiff argues that the vocational expert (VE) testimony cannot be relied upon because the VE said he was "not entirely sure" as to his methodology in determining the number of positions that exist in the national economy in the representative jobs that the VE opined that a hypothetical employee with Plaintiff's RFC could perform. This is a mischaracterization of the record and a quote taken out of context. The VE, when asked about how the Standard Occupational Classification (SOC) numbers found in the Occupational Information Network (also known as the O*NET) correspond to the Dictionary of Occupational (DOT) descriptions of jobs, said:

> Well how they correlate from one to the other, I'm not exactly sure. I know that the categories are very similar.
>
> . . .
>
> There's more jobs now using, since the DOT came out, so that's why there's 12 categories in the SOC as opposed to nine in the DOT.
>
> . . .
>
> So the SOC kind of breaks down jobs even further than the DOT does.

(AR 81).

Plaintiff's argument is that the VE did not explain how he arrived at the numbers assigned to each specific job from the broader statistic of number of positions existing in a broader job category. This is a different matter than that testified to by the VE. The VE compared the categorization of jobs in the DOT to the categorization of jobs in the O*NET.

Though Plaintiff cites to dicta in *Alaura v. Colvin*, 797 F.3d 503 (7th Cir. 2015), and to a district court opinion for the proposition that the equal distribution method is an inappropriate way to derive job specific numbers from job category numbers, the VE did not testify to using the equal

distribution method. In short, Plaintiff's objection to the VE's testimony does not match the testimony that the VE provided. There is no basis presented on which to remand the case.

Plaintiff's other arguments regarding step five are actually arguments that Plaintiff has limitations that the ALJ did not account for in determining Plaintiff's RFC. The Court will address those arguments in Part C below.

### B. Activities of Daily Living

Plaintiff argues that the ALJ overemphasized her activities of daily living. When an ALJ relies on a plaintiff's daily activities to discredit plaintiff's alleged limitations, the ALJ must explain why those activities are inconsistent with the claimed limitations. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). That a plaintiff performs "minimal daily activities" does not necessarily mean that the plaintiff can work, *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), especially if the plaintiff cannot even perform those activities competently. *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010).

> The ALJ found that
>
> [T]he record reflects that the claimant is able to engage in a fairly full range of activities as she has a driver's license, is able to drive to familiar places, shops for groceries, reads "all the time," cares for nearly all her personal needs independently, talks on the phone, goes to the library, prepares simple meals, does laundry, washes dishes, handles bank accounts, writes checks, and watches television. Such activities, especially when considered in conjunction with the other evidence of record, fail to support a more restrictive assessment of the claimant's functioning.

(AR 29 (citation omitted)). In support, the ALJ cited the Third Party Function Report completed by Plaintiff's mother, the Function Report that Plaintiff completed, and Plaintiff's testimony.

Though Plaintiff argues that the ALJ "overemphasized" her daily activities, the ALJ explicitly considered these activities "in conjunction with the other evidence of record." The ALJ also noted elsewhere in the record that Plaintiff said that she should not be driving, has bounced a couple of checks, and has trouble following directions. *See* (AR 28). The ALJ noted Plaintiff's

5

alleged shortcomings in performing these activities and did not equate these activities with the ability to perform full-time, competitive work. There is no basis for remand here.

### C. Plaintiff's Limitations

Plaintiff argues that the ALJ should have found Plaintiff to have coordination limitations based on statements and testimony provided by Plaintiff and her mother, a 1992 psychological evalutaion, and the 2015 opinion of a psychologist. *See* (Opening Br. 6, 11, ECF No. 19). Plaintiff also identifies a 2018 neuropsychological evaluation, but the Appeals Council found that the evidence—dated approximately five months after the ALJ's decision—does not relate to the period at issue and therefore does not affect the ALJ's decision. (AR 2). Plaintiff has not argued that the Appeals Council's finding is in error. Thus, the Court will not review the decision that the 2018 neuropsychological evaluation is not from the relevant time period.

The ALJ stated that there is no evidence in the record substantiating the existence of a medically determinable impairment which could be related to Plaintiff's coordination limitations. (AR 24). However, a psychological evaluation was performed on January 16, 1992, which is during the time period at issue. The following is from Sheridan P. McCabe, Ph.D,'s report from that evaluation.

> She had a great deal of difficulty on the Tactual Performance Test and was unable to place all of the blocks, even with a very long time. Her right hand functioning is somewhat better than her left suggesting that her learning ability, in terms of spatial and kinesthetic cues is impaired. Most people do better on the second trial on the basis of their experience on the first trial of the test. Not so Ms. [M]. This major problem is further documented by the extremely low scores on the perceptual tasks on the WAIS-R.

(AR 560). Among other matters, the Tactual Performance Test measures motor skills and tactile perception. *Tactual Performance Test (TPT)*, APA Dictionary of Psychology, *available at* https://dictionary.apa.org/tactual-performance-test (last visited Mar. 16, 2020). Dr. McCabe further explained that the "pattern of results is consistent with a traumatic brain injury or a slowly

6

developing tumor in the brain" and, though "[i]t is less likely to be a manifestation of a more generalized brain injury such as might have been the result of the high fever or the swimming pool accident report in her history," "these causes cannot be ruled out." (AR 560-61). In 2015, clinical psychologist Craig Nordstrom made his own medical source statement: "she does present with what appear to be learning deficits and nonverbal areas such as spatial visualization and problem solving," indicating that Plaintiff's learning impairments appear to be "secondary to hypoxia sustained when she fell into a swimming pool when she was a toddler." (AR 397).

The ALJ only briefly referenced Dr. McCabe's notes quoted above by saying "while [Plaintiff] likely has perceptual organization problems (as noted by the examiner), these scores do not support a finding that the claimant would be unable to perform . . . simple tasks." (AR 29). Confusingly, the ALJ characterized the exam as showing both "moderate to severe impairment resulting from brain injury" as well as "unremarkable mental findings." (AR 29). Though the ALJ notes that a career assessment suggested that Plaintiff would find suitable work as a nurse aid, gift cart attendant, or child are assistant, the VE did not testify that a person with Plaintiff's RFC could perform those jobs, so this is of little relevance.

In a Third Party Function Report, Plaintiff's mother indicated that Plaintiff is uncoordinated and clumsy in using her hands. (AR 248) Plaintiff, in her own Report, stated that she is uncoordinated with her use of her hands, that her motor skills are "very bad." (AR 258-59). Plaintiff testified at her hearing that her coordination is "off," that she has trouble with manipulating certain objects, like door locks, windows, and shower heads. (AR 57-59).

The ALJ cited no evidence that countered Dr. McCabe's report and Plaintiff's and Plaintiff's mother's statements about Plaintiff's coordination issues. The issue the Court is considering here is not whether Plaintiff can mentally learn, retain, and process the steps needed

7

to complete simple tasks. Instead, the issue is whether Plaintiff has the coordination and motor skills necessary to manipulate objects as needed to complete the tasks.

To summarize, the ALJ found that there was no evidence to support the asserted lack of coordination, but the psychological evaluation provides such evidence. The ALJ acknowledged that Plaintiff has "moderate to severe impairment resulting from brain injury" and perceptual organization issues but found—without analysis or reference to the evidence that she has difficulty with locks and windows—that she could perform simple tasks. The ALJ has not provided the necessary logical bridge from the evidence to her conclusion that Plaintiff has no limitations in motor skills and coordination. Further, given the ALJ's statement that there was no evidence substantiating the existence of a medically determinable impairment which could be related to Plaintiff's coordination limitations, the Court is cannot be assured that the ALJ adequately considered the 1992 psychological evaluation. This case must be remanded for further consideration of Plaintiff's coordination and motor skill complaints.

Plaintiff also argues that the quality and frequency of her interaction with others should have been limited, but she cites no evidence indicating that she has limitations in interacting with others. As Plaintiff bears the burden of proof at this stage of the process, she has not shown there to be an error.

Plaintiff also argues that the ALJ erred in not finding Plaintiff to have more extensive reasoning limitations or to have a need for unscheduled work breaks at Plaintiff's option; Plaintiff contends that the ALJ did not consider Plaintiff's impairments in combination; and Plaintiff believes that the RFC does not account for her moderate limitation in concentration, persistence, and pace. In the interest of judicial economy, further discussion of these issues is not warranted.

Plaintiff also argues that the ALJ misconstrued the nature of Plaintiff's work at McDonald's and should have considered it to be accommodated work. The Court need not resolve that issue here, as remand is required on other grounds.

### D. Request for Award of Benefits

Though Plaintiff requests an award of benefits, that remedy is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). In this case, remand, not an immediate award of benefits, is required.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the alternative relief requested in the Brief in Support of Plaintiff's Complaint to Review Decision of Commissioner of Social Security Administration [DE 19], **REVERSES** the decision of the Commissioner of Social Security, and **REMANDS** this matter for further administrative proceedings. The Court **DENIES** the request for an award of benefits.

SO ORDERED on March 16, 2020.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT